IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JOSE SEDA MARTINEZ, YAZMIN RAMIREZ RODRIGUEZ, and their conjugal partnership,<br><br>*Plaintiffs,*<br><br>v.<br><br>NATIONAL UNIVERSITY COLLEGE, TRIPLE S INSURANCE COMPANY, INSURANCE COMPANY ABC, CORPORATION DEF, JOHN DOE, JANE DOE, and their conjugal partnership,<br><br>*Defendants.* | CIVIL NO. 18-1975 (DRD) |

**OPINION AND ORDER**

The instant case arises of a *Complaint* filed by Mr. José Seda Martínez ("Mr. Seda"), Mrs. Yazmín Ramírez Rodríguez, and their conjugal partnership (jointly, "Plaintiffs"), seeking damages against National University College ("Codefendant" or "NUC"), Triple S Insurance Company[1] and other unnamed codefendants. Essentially, Plaintiffs' *Complaint* addresses the purported humiliation, harassment and physical and mental anguish suffered by Mr. Seda during his enrollment at NUC, as a result of the institutions alleged refusal to accommodate his disability, in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §12181-12189, Puerto Rico's Act 44 of July 2, 1985, as amended, 1 L.P.R.A. § 501 *et seq*. ("Act 44"), and Articles 1802 and 1803 of Puerto Rico's Civil Code, 31 L.P.R.A. §§ 5141-5142. See Docket No. 1.

---

[1] Triple S Insurance Company was joined as Codefendant through Plaintiffs' *Amended Complaint*. See Docket No. 25.

Later, Plaintiffs filed an *Amended Complaint* to clarifytheir request under Title III of the ADA. To that end, Plaintiffs further requested the Court to order NUC to allow Mr. Seda "to perform his classwork on defendant's building's first floor; providing him with a desk that will accommodate his wheelchair; and inspecting and repairing hazards at the university". See Docket No. 25 ¶ 60.

Subsequently, NUC filed a *Motion for Summary Judgment* where it contends that "(i) plaintiffs have no standing to file a claim under Tittle III of the ADA; (ii) Plaintiffs Requests for Injunctive Relief Under ADA are Moot; (iii) Plaintiffs may not recover monetary damages under Title III of the ADA; (iv) There is no Federal Question Jurisdiction; (v) Upon Dismissal of The Federal ADA Claim the Court Should Dismiss The Instant Case For Lack Of Subject Matter Jurisdiction since Plaintiffs only invoked federal question jurisdiction." See Docket No. 41 at 13. Plaintiffs filed their corresponding *Opposition to Motion for Summary Judgment* and a *Motion to Supplement Opposition to Motion for Summary Judgment*. See Dockets No. 50 and 53. Thereupon, NUC filed a *Reply to Plaintiffs Opposition to Motion for Summary Judgment*. See Docket No. 58.

After carefully reviewing the parties' arguments, the Court **GRANTS in part and DENIES in part** Codefendant's *Motion for Summary Judgment*.

## II.   FACTUAL FINDINGS

The following factual findings are taken from the parties' statements of undisputed facts, and supported documentation. Upon careful review of the record, the Court finds the following facts are undisputed:

1. Mr. Seda (with Student Number 1610635353) commenced his studies at NUC, Bayamón Campus, on March 15, 2017. See Docket No. 41-1 and 41-4.

2. Mr. Seda enrolled at NUC in order to obtain an Associate Degree in the Electrical Engineering Technology in Renewable Energy program ("Electrical Engineering Program"). Id.

3. On June 22, 2019, Mr. Seda completed all of the courses and requirements to attain his Associate Degree in the Electrical Engineering program. Id.

4. On July 10, 2019, Mr. Seda graduated, with all the honors, rights and privileges that the Associate Degree in the Electrical Engineering Program confers. See Docket No. 41-3 and 41-4.

5. On February 18, 2020, Mr. Seda enrolled in order to obtain a Bachelor's Degree in the Network Technology and Application Development program. See Docket No. 61-1. Mr. Seda is set to commence his studies on March 16, 2020. Id.

### III. LEGAL STANDARD

#### A. *Motion for Summary Judgment Standard (Fed. R. Civ. P. 56).*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-325 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." *Veda-Rodriguez v. Puerto Rico*, 110 F.3d 174, 179 (1st Cir. 1997). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." See *Johnson v. Univ. of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013); *Prescott v. Higgins*, 538 F.3d 32, 40 (1st

Cir. 2008) (citing *Thompson v. Coca–Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986); *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). The analysis with respect to whether or not a "genuine" issue exists is directly related to the burden of proof that a non-movant would have in a trial. "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby, Inc.*, 477 U.S. at 255 (applying the summary judgment standard while taking into account a higher burden of proof for cases of defamation against a public figure). In order for a disputed fact to be considered "material" it must have the potential "to affect the outcome of the suit under governing law." *Sands v. Ridefilm Corp.*, 212 F.3d 657, 660–661 (1st Cir. 2000) (citing *Liberty Lobby, Inc.*, 477 U.S. at 247–248); *Prescott*, 538 F.3d at 40 (1st Cir. 2008) (citing *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The objective of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997) (citing the advisory committee note to the 1963 Amendment to Fed. R. Civ. P. 56(e)). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. See *Shalala*, 124 F.3d at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. Id. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The non-movant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence. *Maldonado–Denis v. Castillo Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994). The non-movant's burden thus encompasses a showing of "at least one fact issue which is both

'genuine' and 'material.'" which affects the granting of a summary judgment. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990); see, also, *Suarez v. Pueblo Int'l.*, 229 F.3d 49, 53 (1st Cir. 2000) (stating that a non-movant may shut down a summary judgment motion only upon a showing that a trial-worthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." *Liberty Lobby, Inc.*, 477 U.S. at 247–248. Similarly, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir. 1996); *Tropigas De P.R. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) ("We afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.") (internal citations omitted); *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

When considering a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." *Smith v. Jenkins*, 732 F.3d 51, 76 (1st Cir. 2013) (reiterating *Shafmaster v. United States*, 707 F.3d 130, 135 (1st Cir. 2013)). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] . . . we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture*." Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotations and citation omitted).

Furthermore, the Court must review the record as a whole and refrain from engaging in the assessment of credibility or the gauging the weight of the evidence presented. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000); *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 255 (1986); see, also, *Pina v. Children's Place*, 740 F.3d 785, 802 (1st Cir. 2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves*, 530 U.S. at 150 (quoting *Anderson*, 477 U.S. at 250–51).

Summarizing, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (Emphasis provided). See Fed. R. Civ. P. 56(a). Hence, in order to prevail, Codefendants must demonstrate that, even admitting well-pleaded allegations in light most favorable to Plaintiffs, the applicable law compels a judgment in its favor.

## IV.   ANALYSIS

### A. *Plaintiff's Standing Under Title III of ADA*

Congress enacted the ADA "'to address the major areas of discrimination faced day-to-day by people with disabilities,' *id.* § 12101(b)(4), hoping 'to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals,' *id.* § 12101(a)(8)." *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 303 (1st Cir. 2003); see, also, *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 4 (1st Cir. 2000). Title III of the ADA, the provision at issue here, prohibits discrimination by a public accommodation on the basis of disability. 42 U.S.C.A. § 12182. "It sends a bluntly worded message to those establishments that fall within its purview: you may not discriminate against an individual in the full and equal access to goods and services on the basis of a disability." *Dudley*, 333 F.3d at 303.

To that end, Title III's general prohibition provision states that: "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.A. § 12182 (a).

To enforce said prohibition, Title III contemplates particular remedies that may be executed against "any person who is being subjected to discrimination on the basis of disability in violation of this subchapter […]" 42 U.S.C.A. § 12188 (a)(1). Specifically, Title III grants the person subject to discrimination injunction relief. 42 U.S.C.A. § 12188 (a)(2).

In order for a plaintiff to succeed in his Title III claim and obtain the referenced injunctive relieve, he must make a six-part showing:

> (1) that she 'comes within the protections of the ADA as a person with a disability'; (2) that "the defendant's establishment is subject to the mandates of Title III as a place of public accommodation'; (3) that "the defendant has a discriminatory policy or practice in effect'; (4) that she 'requested a reasonable modification in that policy or practice which, if granted, would have afforded him access to the desired goods'; (5) 'that the requested modification—or a modification like it—was necessary to afford that access'; and (6) "that the defendant nonetheless refused to modify the policy or practice.

*Dudley*, 333 F.3d at 307 (citations omitted). However, before attempting to prove the merits of the case, as in any case, "[t]he burden of establishing standing rests with the party invoking federal jurisdiction." *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 14 (1st Cir. 2004); see, also, *Bennett v. Spear,* 520 U.S. 154, 167–168 (1997). This is equally applicable under Title III claims. See *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 67 (1st Cir. 2003) ("Standing is thus a threshold question in every case, requiring the court to determine 'whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant [ ] invocation of federal-court jurisdiction.'" (internal citations omitted)); see, also, *Warth v. Seldin,* 422 U.S. 490, 498 (1975); *N.H. Right to Life Political Action Comm. v. Gardner,* 99 F.3d 8, 12 (1st Cir.1996). "If a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." *U.S. v. AVX Corp.,* 962 F.2d 108, 113 (1st Cir.1992).

7

Therefore, a plaintiff "must establish three elements for constitutional standing: actual or threatened injury, causal connection between the injury and the challenged conduct, and that a favorable Court decision can redress the injury." *McInnis–Misenor v. Me. Med. Ctr.*, *supra*, at 67; see, also, *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

To this end, Codefendant argues that Plaintiffs have no standing since Mr. Seda doesn't have a "'real and immediate threat of repeated injury' nor there exists continuing, present adverse defects as required by ADA to have standing to file for Injunctive relief, because Mr. Seda satisfactorily completed, on June 22, 2019, all the courses an requirements of the Degree of Associate in Electrical Engineering Technology in Renewable Energy in which he was enrolled at NUC". Docket No. 41 at 6-7. To support their argument, Codefendants rely on two, non-binding cases.

First, Codefendant cites *Rodriguez v. Investco, L.L.C.*, 305 F. Supp. 2d 1278, 1284-84 (M.D. Fla. 2004) for the proposition that a plaintiff doesn't have basis for relief under ADA "where he lacked a continuing connection to the defendant's facility". Docket No. 41 at 6. Although Codefendant makes this statement seem conclusive, it's far from it. The Court notes that Codefendant failed to explain that: (1) *Rodriguez v. Investco* had a very particular set of facts and background, which are clearly distinguishable from the matter at hand; and (2) the "continuing connection" issue was not the determining factor in the Court's decision, rather, it was one of the multiple factors consider, after a trial, to dismiss the case.[2] Consequently, *Rodríguez v. Investco* is unpersuasive to resolve this matter.

---

[2] Also, without delving too much into the instant non-controlling case, we believe that the Court's comments pertaining to plaintiff's "continuing connection", need to be put into the proper context. The Court expressed that "[a]t trial, Plaintiff was evasive and willfully ignorant, totally lacking credibility. His explanation for his initial visit to the Facility was disingenuous, and he did not convey any honest desire to return there. Plaintiff's testimony left the distinct impression that he is merely a professional pawn in an ongoing scheme to bilk attorney's fees from the Defendant." *Rodriguez v. Investco, L.L.C.*, 305 F. Supp. 2d 1278, 1285 (M.D. Fla. 2004). The Court's determination was made

Second, Codefendant references *DMP v. Fay Sch. ex rel. Bd. of Trustees*, 933 F. Supp. 2d 214, 221–22 (D. Mass. 2013). Codefendant argues that in *DMP v. Fay* the Court determined that plaintiff's request for injunctive relief was moot under ADA since plaintiff "began attending ninth grade in another school in August 2011 and would not be able to return to Fay (Fay only goes through the ninth grade)." Docket No. 41 at 8. Again, Codefendant failed to illustrate to the Court the proper context of the cited case determination. Although we recognize that in *DMP v. Fay* the Court did reference the fact that plaintiff had changed school, this was not the determining factor for the denial of his Title III claim. This is clearly revealed by the Court's reasoning: "because I find that he failed to request a reasonable accommodation and was not otherwise qualified to matriculate at Fay, he has failed to establish a claim for violation of the ADA." *DMP v. Fay Sch. ex rel. Bd. of Trustees*, *supra*, at 222. Ergo, *DMP v. Fay* is unpersuasive to resolve this matter.

Conversely, in their *Opposition* and *Motion to Supplement Opposition* Plaintiff contests that Codefendant's argument fails for reasons of fact and law. First, as a matter of fact, Plaintiffs informed that Mr. Seda re-enrolled in NUC; this time, to attain a bachelor's degree in Network Technology and Application Development program. See Docket No. 51-1 and Docket No. 53-1. To that end, Plaintiffs essentially argue that Mr. Seda could potentially be subject to the same alleged discriminatory behavior and, thus, that it has a real and immediate threat of repeated injury.[3]

---

after the presentation of plaintiff's case at trial; the situation before us its dramatically different as in this case the discovery stage has yet to be concluded.

[3] In its *Reply to Plaintiffs' Opposition* Codefendants' argue that the affidavit included by Plaintiffs to support their contention constitutes a "sham affidavit" and should be stricken from the record. Pursuant to the "sham affidavit" doctrine "a party may not use a later affidavit to contradict facts previously provided to survive summary judgment, unless the party provides a satisfactory explanation for providing post summary judgment affidavit. *Morales v. AC Orssleff's EFTF,* 246 F.3d 32, 35 (1st Cir.2001). *Reyes v. Prof'l HEPA Certificate Corp.*, 74 F. Supp. 3d 489, 491 (D.P.R. 2015)." *Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380 (1st Cir. 2016). "[I]In determining whether the testimony constitutes an attempt to manufacture an issue of fact so as to defeat summary judgment, the court may consider the timing of the affidavit, as well as the party's explanation for the discrepancies. See *Orta–Castro*

In their *Reply*, Codefendant does not contend the fact that Mr. Seda re-enrolled at NUC, instead it questions the motives behind Mr. Seda's re-enrollment. However, the Court believes that his intentions are beyond the scope of this petition for summary judgement and, more importantly, are nor relevant at this time. The Court finds that by re-enrolling at NUC, Mr. Seda could potentially be subject to the alleged misconduct that gave rise to the *Amended Complaint* and, therefore, could be entitled to the injunctive relief sought under Title III of the ADA. Therefore, Codefendant's request for summary judgement as to Plaintiffs' standing to request injunctive relief under Title III is denied at this time. Nevertheless, this ruling does not entirely resolve the concerns of Plaintiffs' standing.

As previously referenced, "[i]n the context of Title III of the ADA, a plaintiff generally must 'show a real and immediate threat that a particular (illegal) barrier will cause future harm.'" *Disabled Americans For Equal Access, Inc. v. Ferries Del Caribe, Inc.*, 405 F.3d 60, 64 (1st Cir. 2005) (internal citations omitted). Plaintiffs further contend that injunctive relief available under Title III of the ADA may be available to a petitioner if the conduct in questions is "capable of repetition, yet evading review".[4] Docket No. 50 at 2. A review of Codefendant's *Reply* reveals arguments, supported by evidence, as to the purported fact that the conduct addressed in Plaintiffs' *Amended Complaint* has already been resolved.

---

*v. Merck, Sharp & Dohme Química PR., Inc.,* 447 F.3d 105, 110 (1st Cir. 2006). The Court finds that the affidavit in question does not fall under the purview of the "sham affidavit" doctrine. Essentially, our reasoning follows the fact that the discovery period for this case has yet to be concluded and the parties still have a responsibility to inform and discover relevant new facts. Furthermore, the fact that Plaintiffs included additional evidence as to his re-enrollment in the NUC -which was not contested by Codefendant- makes his statements in the affidavit a relevant fact that must be considered by the Court, not a mere "attempt to manufacture an issue of fact".

[4] Although this argument is being considered for the purposes of resolving Codefendant's *Motion for Summary Judgement*, the Court alerts Plaintiffs that "[t]his exception "is not a juju, capable of dispelling mootness by mere invocation." *Oakville Development Corp. v. F.D.I.C.*, 986 F.2d 611, 615 (1st Cir. 1993); see, also, *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). (It is a doctrine that applies "only in exceptional situations.").

Plaintiff should be aware that, "a federal court may not grant injunctive relief when, as in this case, intervening events have eliminated any reasonable anticipation that the aggrieved party will, in the future, be faced with a recurrence of the alleged harm. *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); *Metro–Goldwyn Mayer, Inc. v. 007 Safety Prods., Inc.,* 183 F.3d 10, 15 (1st Cir.1999)." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 49 (1st Cir. 2006). To that end, a plaintiff "must maintain a personal interest in the outcome throughout the litigation or the controversy becomes moot and unjusticiable despite the court's retention of subject matter jurisdiction." See *Matos v. Clinton School District,* 367 F.3d 68, 71 (1st Cir.2004); see, also, *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 16 (1st Cir. 2004) (affirming a dismissal of a Title III of ADA claim for mootness).

Since the referenced arguments, and corresponding evidence, were presented in Codefendant's *Reply* and did not constitute part of the proposed uncontested facts that were subject to opposition by Plaintiffs, the Court finds that is not the time to rule on the mootness issue. However, because the potential mootness of Plaintiffs requests concerns the Court greatly, an *Order* will be entered promptly to schedule a conference to discuss this and other issue before moving on with the proceedings.

### A. *Plaintiffs' request for monetary relief under the ADA, Puerto Rico's Act 44 and Articles 1802 and 1803 of Puerto Rico's Civil Code*

On the other hand, as previously stated, Plaintiffs seek monetary damages under ADA, Act 44 and Articles 1802 and 1803 of Puerto Rico's Civil Code. See Docket No. 25 at 7-9. In the *Motion for Summary Judgment*, Codefendant contends that Plaintiffs are not entitled to receive monetary relief under any of the aforementioned statutes. See Docket No. 41 at 10-13; see, also Docket No. 58 at 8-9. The Court agrees.

11

### *i.   Request under Title III of ADA*

First, Codefendant argues that "[t]he case law is clear regarding the unavailability of damages under Title II of the ADA […] Section 12188 (a)(1) does not contemplate an award of money damages in suits brought by private parties. Several other courts of appeals have reached the same conclusion." Docket No. 41 at 10. Codefendant is correct; the Courts have consistently held that "money damages are not an option for private parties suing under Title III of the ADA." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 50 (1st Cir. 2006).[5]

> Although Title III is expansive in its application, the remedies available under the title are narrow. Section 12188(a)(1) provides the remedial scheme for that title by incorporating the remedies available under Title II of the Civil Rights Act, see 42 U.S.C. § 12188(a)(1), which allows a "person aggrieved" to institute "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order," 42 U.S.C. § 2000a–3(a). We have stated that, "[b]y the plain terms of that provision, ... damages for past harms are not available." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 51 (1st Cir. 2006). The only relief that is available is "preventive" injunctive relief. See id.

*G. v. Fay Sch.*, 931 F.3d 1, 9 (1st Cir. 2019);[6] see, also, *Santiago Ortiz v. Caparra Ctr. Assocs., LLC*, 261 F. Supp. 3d 240, 250 (D.P.R. 2016).

Consequently, the Court hereby denies any monetary claims -including those for punitive damages- requested by Plaintiffs' under Title III of ADA.[7] Accordingly, the district court correctly concluded that it lacked jurisdiction to consider the plaintiff's claims for either compensatory or

---

[5] See *Sanchez v. ACAA*, 247 F. Supp. 2d 61, 67 (D.P.R. 2003) ("Pursuant to Title III, the Court may award monetary damages only when the Attorney General becomes involved in the matter. That is clearly not the case here.") (internal citations omitted).

[6] "Several other courts of appeals have reached the same conclusion. See, e.g., *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 86 (2d Cir.2004); *Bowers v. NCAA,* 346 F.3d 402, 433 (3d Cir.2003); *Am. Bus Ass'n v. Slater,* 231 F.3d 1, 5 (D.C.Cir.2000); *Smith v. Wal–Mart Stores, Inc.,* 167 F.3d 286, 293 (6th Cir.1999); *Jairath v. Dyer,* 154 F.3d 1280, 1283 n. 7 (11th Cir.1998)." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 50 (1st Cir. 2006).

[7] On another hand, the Court recognizes that it has discretion to allow for reasonable attorney's fees to the prevailing party in an action under Title III. See 42 U.S.C. § 12188(a) and 42 U.S.C.A. § 2000a-3. Furthermore, the Court notes that "[a] litigant's interest in a possible award of attorneys' fees is not enough to create a justiciable case or controversy if none exists on the merits of the underlying claim." *Goodwin v. C.N.J., Inc.*, supra, at 51; see, also, *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990)

punitive damages. See *Goodwin v. C.N.J., Inc.*, *supra* at 50 ("[M]oney damages are not an option for private parties suing under Title III of the ADA. Accordingly, the district court correctly concluded that it lacked jurisdiction to consider the plaintiff's claims for either compensatory or punitive damages.").

### ii. *Request under Puerto Rico Act 44*

The United States District Court for the District of Puerto Rico has had ample opportunity to pass judgements on claims under Title III of the ADA that also include requests for relief under Puerto Rico's Act 44.[8] Upon analyzing the interaction between both statutes, this District Court has agreed that Act 44 is Puerto Rico's counterpart to the ADA. See *Salgado-Candelario v. Ericsson Caribbean, Inc.*, 614 F. Supp. 2d 151, 175 (D.P.R. 2008); *Arce v. ARAMARK Corp.,* 239 F.Supp.2d 153, 169 (D.P.R. 2003); see, also, *Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, 138 (1st Cir. 2017) ("Law 44 and the ADA are coterminous"); *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 87 (1st Cir. 2008). Hence, a plaintiff must prove the same elements of proof for a claim under Act 44 as for a claim under the ADA. See *Torres v. House of Representatives of the Commonwealth of P.R.*, 858 F. Supp. 2d 172, 194 (D.P.R. 2012); *Salgado-Candelario v. Ericsson Caribbean, Inc.*, 614 F. Supp. 2d 151, 175 (D.P.R. 2008); *Román Martínez v. Delta Maint. Serv., Inc.*, 229 F.Supp.2d 79, 85 (D.P.R. 2002).

Now, as previously discussed, money damages are not available under Title III of ADA. Consequently, in cases where a plaintiff filed claims under Title III and Act 44, this District Court has determined that "provided that Act 44 requires no separate analysis to that of ADA and mirrors

---

[8] Furthermore, the Court notes that the First Circuit has not addressed this matter. We recognize that in *Marcano-Rivera v. Pueblo International, Inc.*, 232 F.3d 245 (2000) the First Circuit affirmed a verdict from a jury which awarded damages, under ADA and Act 44. However, *Marcano-Rivera* was brought under an employment context, where Title I of ADA controls and recognizes awards of damages. Consequently, *Marcano-Rivera* is distinguishable and inapplicable to this analysis.

its provisions for relief" a plaintiff cannot seek money damages under Act 44 in these instances. *Rodríguez-Negrón v. San Juan Children's Choir*, No. CV 15-1608 (GAG), 2017 WL 1131889, at *10 (D.P.R. Mar. 24, 2017). [9] The Court agrees with the District Court's aforementioned determinations; to that end, Plaintiffs' request for monetary relief under Act 44 is hereby denied.

### iii. Request under Articles 1802 and 1803

Finally, the ADA is not to be construed "to invalidate or limit the remedies, rights, and procedures of any Federal law or law of any State or political subdivision of any State of jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this chapter". 42 U.S.C.A. § 12201 (b). However, "[w]hen a plaintiff brings claims covered by a specific labor or employment law […] the Puerto Rico Supreme Court and courts in this district bar plaintiffs from bringing claims pursuant to Articles 1802 and 1803 based on the same alleged conduct." *Arroyo-Ruiz v. Triple-S Mgmt. Grp.*, 206 F. Supp. 3d 701, 720 (D.P.R. 2016); see, also, *Franceschi-Vázquez v. CVS Pharmacy*, 183 F. Supp. 3d 333, 344 (D.P.R. 2016).

Consequently, "an Article 1802 claim is not cognizable [when] it arises from the same facts as plaintiff's claims under the ADA." *Aguirre v. Mayaguez Resort & Casino, Inc.*, 59 F. Supp. 3d 340, 357 (D.P.R. 2014). As in the referenced case law, in this case, the *Amended Complaint* "re-alleges for the Article 1802 [and Article 1803] claim[s] the same facts which formed the basis of plaintiffs' ADA claim." *Santiago Ortiz v. Caparra Ctr. Assocs.*, LLC, 261 F. Supp. 3d 240, 250 (D.P.R. 2016); see, also, *Aguirre v. Mayaguez Resort & Casino, Inc.*, 59 F. Supp. 3d 340, 357 (D.P.R. 2014). Plaintiffs' claims under Article 1802 and 1803 of Puerto Rico's Civil Code are therefore denied.

---

[9] By the same token, and pursuant to the referenced case law, the Court warns Plaintiffs that if their statutory claim for injunctive relief under ADA fails, they will have no alternative or additional relief under Act 44.

## V.     CONCLUSION

For the reasons set forth above, the Court **DENIES**, at this time, Codefendant's *Motion for Summary Judgment* as to Plaintiffs' request for injunctive relief under Title III of the ADA. However, because the Court believes there may be serious concerns as to the possible mootness of Plaintiffs' injunctive relief, in light of the allegations presented by Codefendant in their *Reply to Plaintiffs' Opposition*, [10] an *Order* will be entered forthwith to schedule a Status/Settlement Conference to discuss this issue, the status of discovery and any pending matters before moving forward with the proceedings.

Finally, the Court **GRANTS** Codefendant's *Motion for Summary Judgment* as to Plaintiffs' request for monetary relief under Title III of the ADA, Puerto Rico's Act 44 and Articles 1802 and 1803 of Puerto Rico's Civil Code; consequently, said requests for monetary relief are hereby denied.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, April 21, 2020.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge

---

[10] "[A] case is moot when the court cannot give any "effectual relief" to the potentially prevailing party. *Church of Scientology of California v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895))." *Horizon Bank & Tr. Co. v. Massachusetts*, 391 F.3d 48, 53 (1st Cir. 2004).